IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER KRISTIANSEN,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 3:24-cv-01719-IM

**OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS**

Michelle R. Burrows, 16869 SW 65th Avenue #367, Lake Oswego, OR 97305; Christopher A. Larsen, Pickett Dummigan Weingart LLP, 210 SW Morriston Street, 4th Floor, Portland, OR 97204; Gabriel Chase, Chase Law PC, 2014 NE Broadway Street, Portland, OR 97232; and Joe Piucci, Piccui Law LLC, 900 SW 13th Avenue, Suite 200, Portland, OR 97205. Attorneys for Plaintiff.

Sarah E. Feldman & Ariana N. Garousi, Assistant United States Attorneys, and William M. Narus, Acting United States Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

        Plaintiff Jennifer Kristiansen was arrested for assaulting a federal officer during a protest

in July 2020 near the federal courthouse in Portland, Oregon. Plaintiff alleges that, during the

protest, she was exposed to chemical agents and flash-bang grenades that officers used to

disperse crowds, and brings claims for battery and intentional infliction of emotional distress ("IIED") against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 based on that exposure. She also brings claims for battery, false arrest, and intentional infliction of emotional distress based on the events of her arrest, as well as an overarching negligence claim based on the United States's purported failure to appropriately train the officers involved.

Defendant moves to dismiss the battery and IIED claims based on the use of crowd control measures during the protest, as well as the negligence claim, under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Partial Motion to Dismiss ("Mot."), ECF 14. Defendant does not move to dismiss the tort claims based on the events of Plaintiff's arrest in this motion.

This Court grants the motion and dismisses the battery and IIED claims for failure to state a claim. Plaintiff's battery claim fails to allege that the force used was excessive and her IIED claim fails to allege either intent or an extraordinary transgression of the bounds of socially acceptable conduct. This Court will grant Plaintiff leave to amend if she believes she can cure these deficiencies. Plaintiff's negligence claim is dismissed without leave to amend because it is barred by the discretionary function exception to the FTCA.

## BACKGROUND

The following factual allegations are derived from Plaintiff's First Amended Complaint ("FAC"), ECF 11, and must be accepted as true for purposes of resolving the motion to dismiss.

Beginning in May 2020, months of nightly protests occurred in Portland. *Id.* ¶ 3. These protests were centered on the Mark O. Hatfield U.S. Courthouse. *Id.* ¶ 15. The government deployed law enforcement officers, including U.S. Marshals Service deputies and officers from other federal agencies like the Federal Protective Service, *id.* ¶ 13, with the stated purpose of "protect[ing] federal property and personnel." *Id.* ¶ 6.

Plaintiff attended one such protest on July 20, 2020. *Id.* ¶ 46. Plaintiff arrived at the courthouse around 8:30 PM. *Id.* ¶ 47. At approximately midnight, she alleges that federal law enforcement officers "sent large amounts of red chemical agents into the crowd" and then "fired flash bangs into the crowd." *Id.* ¶¶ 48–49. Shortly thereafter, federal agents began pushing back a line of demonstrators. *Id.* ¶ 50. Plaintiff alleges that one federal officer falsely identified Plaintiff as having previously assaulted the officer. *Id.* ¶ 51. Other federal officers then arrested Plaintiff. *Id.* ¶ 52. During the arrest, officers placed Plaintiff against a wall and frisked her for weapons. *Id.* ¶¶ 53–54. Plaintiff was charged with one count of assaulting a federal officer and one count of failure to obey a lawful order. *Id.* ¶¶ 59–60. All charges against Plaintiff were eventually dismissed. *Id.* ¶ 63.

Plaintiff filed her complaint in November 2024. ECF 1. She brings claims of battery, false arrest, IIED, and negligence under Oregon tort law. *Id.* ¶¶ 67–79.

## STANDARDS

Claims against the United States are barred by sovereign immunity unless the government has waived immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Through the FTCA, Congress has enacted a limited waiver of this immunity, creating "the exclusive remedy for tortious conduct by the United States." *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). In this case, the scope of FTCA liability is determined by reference to Oregon tort law because the "act or omission" at issue is alleged to have occurred in Oregon. *See* 28 U.S.C. § 1346(b)(1).

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to invoke sovereign immunity from suit. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). This Rule permits a defendant to move to dismiss a complaint for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once

challenged, the party invoking federal jurisdiction bears the burden of establishing subject-matter jurisdiction. *Id.*

Rule 12(b)(6) permits a defendant to move to dismiss a complaint because it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully," *id.*, which requires pleading more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not, however, required to credit "a legal conclusion couched as a factual allegation," or allegations that are merely conclusory. *Twombly*, 550 U.S. at 555, 557.

In the "unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 141 S. Ct. 740, 749 & n.8 (2021). A failure under Rule 12(b)(6) to state any element of a viable claim for relief thus also deprives this Court of subject-matter jurisdiction over this action. When a plaintiff "fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Id.* at 749 n.8.

## DISCUSSION

This Court first addresses Defendant's motion to dismiss Plaintiff's battery and IIED claims premised on the government's use of crowd control measures during the protest. This

Court finds that Plaintiff has failed to allege sufficient facts to make out a prima facie battery claim and dismisses that claim with leave to amend. This Court also finds that Plaintiff has not alleged facts sufficient to show that the government's actions went beyond the bounds of socially tolerable conduct. Accordingly, this Court also dismisses the IIED claim with leave to amend.

As for Plaintiff's negligence claim, this Court finds that this claim is barred in its entirety by the discretionary function exception to the FTCA. Plaintiff's negligence claim is premised on a failure to train, which falls squarely within the discretionary function exception to the FTCA.

## A. Battery

Defendant first argues that Plaintiff fails to state a claim for battery under Oregon law based on the government's use of crowd control measures. Mot., ECF 14 at 7–9. This Court agrees and grants the motion to dismiss as to the battery claim.

Under Oregon law, a battery occurs when a person intentionally causes "harmful or offensive contact" with another person. *Ballard v. City of Albany*, 221 Or. App. 630, 640–41 (2008). Oregon law provides, however, that a law enforcement officer is justified in using physical force so long as the force used was not more than necessary under the circumstances to accomplish the officer's law enforcement duties. *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975). Only "the use of excessive force by a police officer . . . can give rise to civil liability for battery." *Ballard*, 221 Or. App. at 641.[1] This standard mirrors the "objective reasonableness" standard that governs a federal civil rights claim premised on the use of

---

[1] Plaintiff argues that *Ballard* only applies to a claim for battery "in making an arrest," but not when the use of force "preceded the arrest." Response to Motion to Dismiss, ECF 17 at 8. Plaintiff offers no explanation for why officers should be subject to ordinary battery liability when dispersing a crowd, but only be liable for the use of excessive force in making an arrest. Plaintiff also argues that the defense recognized in *Ballard* only applies to criminal liability, not civil liability. *Id.* at 10. *Ballard* was a civil case. *See* 221 Or. App. at 641.

excessive force by a law enforcement officer. *See Price v. City of Sutherlin*, 945 F. Supp. 2d 1147, 1157 (D. Or. 2013).

The parties disagree on whether Plaintiff must plead sufficient facts to establish excessive force at the motion to dismiss stage. *See* Resp., ECF 16 at 6–9; Reply, ECF 17 at 3–5. This Court reads *Gigler* and *Ballard* as requiring a plaintiff asserting a battery claim against a law enforcement officer to allege that the force used was unreasonable. At the pleading stage, this is not a particularly difficult standard: A plaintiff must simply allege a use of force that could be determined by a jury to be unreasonable under the circumstances. She need not describe all the factual circumstances that may be relevant to assessing whether a particular use of force was reasonable. But she does need to allege some facts about what happened before the alleged acts of force and what she was doing when the force was used in order to make it plausible that the force used was more than reasonably necessary under the circumstances. *See Gonzales v. City of Clovis*, No.12-cv-00053, 2012 WL 4671179, at *7 (E.D. Cal. Oct. 3, 2012) (dismissing complaint based on use of flashbang device "[d]ue to the lack of details regarding the circumstances under which the officers deployed the 'flash bang' device"). Without some allegations about the circumstances surrounding the use of force, this Court has no basis to infer that Defendant could be held liable for the conduct alleged.

Plaintiff bases her battery claim in part on the "dispersal and delivery of toxic gas which resulted in burns and pain." FAC, ECF 11 ¶ 69(a).[2] This claim is supported only by sparse allegations that, at approximately midnight, law enforcement officers "sent large amounts of red chemical agents" into a crowd of demonstrators and "fired flash bangs into the crowd." *Id.*

---

[2] The First Amended Complaint contains two paragraphs numbered 69. *See* FAC, ECF 11 at 26–27, ¶¶ 69–69. This citation is to the first of the two.

¶¶ 49–50. Plaintiff's allegations speak broadly of the actions of federal officers toward "the crowd." *Id.* She does not plead any other facts about the events of the protest that would tend to make the use of that type of force unreasonable or excessive. Plaintiff's Complaint contains no factual allegations about the period between 8:30 PM, when Plaintiff arrived at the Hatfield Courthouse, and 12:00 AM, when she alleges force was used. FAC, ECF 11 ¶¶ 46–47.

The use of crowd control measures is not *per se* unreasonable force; determining whether force is unreasonable requires balancing "the nature and quality of the intrusion" against the "countervailing government interests." *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018). Plaintiff's First Amended Complaint simply does not contain factual allegations from which a reasonable jury could find that the force used was unreasonable under the circumstances. *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (discussing relevant considerations). Plaintiff has not pled sufficient facts to show that the use of crowd control measures was unreasonable, and thus does not state a cognizable battery claim. The claim must therefore be dismissed with leave to amend.

## B. Intentional Infliction of Emotional Distress

Defendant next argues that Plaintiff fails to state a claim for intentional infliction of emotional distress ("IIED") under Oregon law based on the government's use of crowd control measures. Mot., ECF 14 at 9–11. This Court agrees. Plaintiff does not allege that Defendant intended to inflict severe emotional distress upon her through the use of crowd control measures and does not allege extremely outrageous conduct.

To state an IIED claim under Oregon law, Plaintiff must allege that the officers (1) intended to inflict severe emotional distress upon her, (2) their acts caused Plaintiff's severe emotional distress, and (3) their acts "constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (quoting *Sheets v.*

*Knight*, 308 Or. 220, 236 (1989)). Plaintiff does not allege facts sufficient to support either the first or third elements of this claim.

First, Plaintiff alleges no facts to show that government agents intended to inflict severe emotional distress. This element requires pleading that the agent "either desires to inflict severe emotional distress, or knows that such distress is certain, or substantially certain, to result from his conduct." *Delaney v. Clifton*, 180 Or. App. 119, 132 (2002) (citation omitted). Plaintiff does not allege facts showing that the federal agents, in deploying the chemical irritant or flash-bang grenades, intended to inflict severe emotional distress upon her or knew such emotional distress was likely to result. Even accepting all of Plaintiff's alleged facts as true and drawing all inferences in her favor, she has not plausibly alleged that the federal agents were acting more than negligently.

Second, Plaintiff does not allege that the agents' actions amounted to an extraordinary transgression of the bounds of socially tolerable conduct. "Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." *Id.* at 130. "[W]hether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law." *Id.* at 129. The most important "contextual factor" in determining whether conduct was extreme and outrageous is if "a special relationship exists between a plaintiff and a defendant." *House v. Hicks*, 218 Or. App. 348, 360 (2008). Plaintiff admits that she does not plead any such relationship. Resp., ECF 17 at 11.

Plaintiff fails to state an IIED claim because the government's alleged conduct—deploying crowd control measures to disperse a crowd of demonstrators—is not "outrageous in the extreme" as a matter of law. *Patton v. J.C. Penney Co.*, 301 Or. 117, 124 (1986). The mere

use of chemical agents or flash-bang grenades to disperse a crowd "is not so gratuitous as to give rise to a reasonable inference that it was applied for the purpose of inflicting [severe emotional] harm." *Puente v. City of Phoenix*, 123 F.4th 1035, 1056 (9th Cir. 2024). While Plaintiff asserts that the use of crowd control methods served "no legitimate law enforcement purpose," FAC, ECF 11 ¶ 75, "conduct unbecoming [of] peace officers" is not sufficient to support an IIED claim, *Pakos v. Clark*, 253 Or. 113, 132 (1969). Plaintiff does not allege any facts that show this use of force was unrelated to the legitimate law enforcement objective of "protect[ing] federal property and personnel," FAC, ECF 11 ¶ 16, or that otherwise give rise to an inference that these crowd control methods were intended to inflict severe emotional harm.

Plaintiff argues that the use of crowd control measures transgressed the bounds of socially tolerable conduct by asserting that the government's actions "were part of a pattern of targeted violence that was directed, supported, and/or enabled by officers at the highest levels of the Executive Branch." Resp., ECF 17 at 13. This argument misses the mark. It is "the defendant's specific acts, rather than their motives, that must be outrageous." *Cisneros v. City of Klamath Falls*, 604 F. Supp. 13, 1114, 1128 (D. Or. 2022). Although Plaintiff faults federal agents for "fail[ing] to employ de-escalation strategies or tactics," Resp., ECF 17 at 13, she does not show that the "use of chemical agents" against her by unidentified federal officers during the early morning hours of July 21, 2020, FAC, ECF 11 ¶¶ 48–49, 75, was so outrageous as to sustain an IIED claim. Plaintiff is granted leave to amend this claim if she believes she can cure these defects.

## C. Negligence

Defendant moves to dismiss Plaintiff's negligence claim in its entirety. Mot., ECF 14 at 12–21. Plaintiff's theory of negligence is that Defendant negligently failed to train its officers. FAC, ECF 11 ¶ 80. Plaintiff alleges Defendant knew "its agents were not appropriately trained"

PAGE 9 – OPINION & ORDER GRANTING MOTION TO DISMISS

and that her injuries "were a foreseeable and direct result of the United States' failure to train." *Id.* Plaintiff also alleges that the consequences of the alleged failure to train included violations of "the minimum standards of care and duty owed under" the Fourth Amendment, *id.* ¶ 81(b), and that the agents' use of force violated the First and Fourth Amendments, *id.* ¶ 81(e)–(f).

Defendant argues that Plaintiff may not base her negligence claim on intentional conduct, Mot., ECF 14 at 17, and that negligent training and supervision of its officers is a discretionary function that cannot form the basis of liability under the FTCA, *id.* at 12. This Court agrees with Defendant. Plaintiff's negligence claim fails because the discretionary function exception to the FTCA bars the claim, so this Court lacks subject-matter jurisdiction.

### 1.  Legal Standard

The FTCA's waiver of sovereign immunity contains various exceptions that "retain sovereign immunity with respect to certain governmental functions that might otherwise be disrupted by FTCA lawsuits." *Molzof v. United States*, 502 U.S. 301, 312 (1992). The discretionary function exception, 28 U.S.C. § 2680(a), preserves the United States' immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused." This exception is meant to "prevent judicial 'second-guessing' of 'governmental actions and decisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (citations omitted).

In *Gaubert*, the Supreme Court established a two-step inquiry for determining whether conduct falls within the discretionary function exception. 499 U.S. at 322–23. First, the court assesses whether the challenged conduct was "discretionary in nature," meaning that it involved "an element of judgment or choice." *Id.* at 322. This requirement is not satisfied "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to

PAGE 10 – OPINION & ORDER GRANTING MOTION TO DISMISS

follow." *Id.* (citation omitted). Second, the court must evaluate whether the conduct involves the exercise of the kind of judgment "that the discretionary function exception was designed to shield," *id.* at 322–23, meaning judgment that is "susceptible to policy analysis," *id.* at 325. The second step asks only whether the challenged decision is "by its nature, susceptible to a policy analysis," not whether it was "actually grounded in policy considerations." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). At the motion-to-dismiss stage, "a plaintiff must advance a claim that is facially outside the discretionary function exception." *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992).

### 2. Discretionary Judgment

Plaintiff focuses her arguments on the first step of the *Gaubert* test, contending that the discretionary function exception does not apply here because the government's conduct violated constitutional and statutory mandates. Resp, ECF 17 at 18. The government's alleged failure to train its agents, she reasons, falls outside the discretionary function exception because agents lack discretion to violate the Constitution or federal statute. *Id.*; *see Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate").

These arguments are unpersuasive. Plaintiff only alleges that the failure to train was negligent, not that it directly amounted to a constitutional violation. As for the statutory mandate, the statute Plaintiff identifies, 40 U.S.C. § 1315, does not mandate any particular training requirements. The guidance document she identifies likewise cannot provide a legal mandate that eliminates a federal officer's discretion.

### a. Constitutional violation

Plaintiff argues that her failure-to-train theory is premised on conduct that "not only amounts to negligence, but also 'was egregious enough to be a constitutional violation.'" Resp.,

ECF 17 at 20. In support of her negligence claim, Plaintiff alleges that the government's policies violated "the minimum standards of care and duty owed under" the Fourth Amendment, FAC, ECF 11 ¶ 81(b), and that the agents' use of force violated the First and Fourth Amendments, *id.* ¶ 81(e)–(f). Plaintiff reasons that, because her claims "arise from a failure to train officers in crowd control management techniques complying with both the Fourth and First Amendments," her claims fall outside the scope of the discretionary function exception. Resp., ECF 17 at 20–22.

The Ninth Circuit has suggested that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000). *Nurse* did not "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor," *id.*, and the Ninth Circuit has never elaborated on the level of specificity a constitutional provision must provide to defeat the application of the discretionary function exception.

This Court finds that Plaintiff does not allege a constitutional violation based on an allegedly negligent failure to train. Alleging a violation of the Fourth Amendment requires proving that the defendant acted intentionally. *See Nelson v. City of Davis*, 685 F.3d 867, 876 (9th Cir. 2012). The First Amendment likewise requires a showing of intent. *See Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994). Under Oregon law, intentional conduct cannot form the basis of a negligence action. *Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992). Plaintiff does not argue that Oregon courts have adopted the First or Fourth Amendments as governing standards under Oregon negligence law. *See, e.g.*, *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1128 (9th Cir. 2021) (holding a district court erred by conflating Fourth Amendment standards with state negligence law). Plaintiff therefore cannot allege that Defendant negligently

violated the First or Fourth Amendments. Either Defendant's failure to train was intentional, thus

placing it outside the boundaries of a negligence claim,[3] or it was negligent, meaning it did not

violate the First or Fourth Amendments. But both cannot be true here.[4]

### b. Statutory violation

In the alternative to her alleged constitutional violation, Plaintiff argues that her claim

falls outside the discretionary function exception because Defendant's failure to train "violated

the legal mandate set forth under 40 U.S.C. § 1315." Resp., ECF 17 at 23. That statute authorizes

the Secretary of Homeland Security to designate employees "as officers and agents for duty in

connection with the protection of property owned or occupied by the Federal Government and

---

[3] This Court notes that Plaintiff previously brought *Bivens* claims based on the same facts, which this Court dismissed. *Kristiansen v. Russell*, No. 3:21-cv-00546-IM, 2022 WL 1910138, at *8 (D. Or. June 2, 2022). A *Bivens* claim would be the proper vehicle for a claim based on an intentional constitutional violation. *See FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) (explaining that the FTCA provides a cause of action only for state law claims).

[4] This Court acknowledges that one court in this District has held that a negligent failure to train leading to alleged constitutional violations may amount to a negligence claim under the FTCA. *Dundon v. United States*, No. 3:22-cv-594-SI, 2024 WL 4950273, at *5 (D. Or. Dec. 2, 2024). In *Dundon*, Judge Simon noted that a "negligent failure to train can form the basis for a constitutional violation" under Section 1983 or *Bivens*, and found "no reason why this same analysis . . . would not apply when a plaintiff alleges a claim under the FTCA." *Id.* at *4–*5.

This Court respectfully disagrees with that analysis. A failure to train may form the basis for a constitutional violation only when a municipality's failure to train "evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To meet this standard, "[a] showing of simple or even heightened negligence will not suffice." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997). Plaintiff in this case alleges only negligence, not deliberate indifference, *see* FAC, ECF 11 ¶ 80, and therefore does not allege a constitutional violation.

Moreover, even if Plaintiff had pled deliberate indifference, she still would not be able to bring her claim under the FTCA. A deliberate indifference failure-to-train claim is a theory by which a municipality may be held liable for a policy that "causes a constitutional deprivation." *City of Canton*, 489 U.S. at 389. This is effectively a constitutional tort claim, and constitutional tort claims cannot be brought under the FTCA. *Meyer*, 510 U.S. at 478.

persons on the property." § 1315(b)(1). It does not refer to training or impose any training requirements at all, much less the specific training "in responding to riots and conducting crowd control operations" that Plaintiff argues should have been conducted. FAC, ECF 11 ¶ 81(d).

Plaintiff also argues that Defendant violated a document she identifies as "Guidelines for the Exercise of Law Enforcement Authorities by Officers and Agents of the Department of Homeland Security" under 40 U.S.C. § 1315, a 2005 publication by the Office of the Attorney General. Guidance documents issued by federal agencies "do not have the force and effect of law," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (citation omitted), and typically do not constrain the agency's otherwise lawful activities, much less create a standard of care applicable in a state law negligence action. This is not a "specific and mandatory" regulation that creates "clear duties incumbent upon the government actors," *Parsons v. United States*, 811 F. Supp. 1411, 1416 (E.D. Cal. 1992) (citation omitted), and thus cannot provide a basis to avoid the discretionary function exception.

### 3. Susceptibility to Policy Analysis

On the second step of the *Gaubert* test, this Court finds that decisions about training and supervision are covered by the discretionary function exception. The Ninth Circuit has repeatedly held that allegations of negligent training and supervision "fall squarely within the discretionary function exception." *Nurse*, 226 F.3d at 1001. Decisions "relating to the hiring, training. and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021) (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009); *Gager v. United States*, 149 F.3d 918, 921–22 (9th Cir. 1998); *Plater v. United States*, 359 F. Supp. 3d 930, 941 (C.D. Cal. 2018).

Training decisions "implicate[] competing policy considerations, such as employee and public safety, economic resources (including the number of individuals to be trained, the extent and cost of training, and the agency's resources), impact on the agency's relationship with contractors, and the agency's goals and duties." *Kelly v. United States*, 241 F.3d 755, 762 (9th Cir. 2005); *see also Burkhardt v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (describing additional policy considerations). Supervision decisions likewise involve "matters of balancing management interests in the administration and operation of the agency to carry out effectively its governmental mission," which also "encapsulate[s] the essence of the discretionary function exception." *M.D.C.G. v. United States*, 956 F.3d 762, 772–73 (5th Cir. 2020); *see Nanouk v. United States*, 974 F.3d 941, 946–47 (9th Cir. 2020) (explaining that a negligent supervision claim would require the court to second-guess agency policy judgments).

Plaintiff is essentially alleging that Defendant should have provided more training, or different training, or better training. These are all policy decisions shielded by the discretionary function exception. For the above reasons, Plaintiff's negligence claim is barred by the discretionary function exception and must be dismissed for lack of subject-matter jurisdiction. *See Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

**D. Jury Demand**

Defendant moves to strike Plaintiff's demand for a jury trial. Mot., ECF 14 at 21. The FTCA explicitly prohibits a jury trial. 28 U.S.C. § 2402 ("[A]ny action against the United States . . . shall be tried by a court without a jury."); *see Carlson v. Green*, 446 U.S. 14, 22 (1980) (explaining that "a plaintiff cannot opt for a jury in an FTCA action"). Plaintiff concedes that the request for a jury trial in her complaint should be stricken. Resp., ECF 17 at 28. The Court strikes Plaintiff's demand for a jury trial. Any amended complaint shall not include a request for jury trial.

PAGE 15 – OPINION & ORDER GRANTING MOTION TO DISMISS

**E.  Attorney's Fees**

Defendant moves to strike Plaintiff's demand for an award of attorney's fees. Mot., ECF 14 at 21. "[S]overeign immunity bars an award of attorneys' fees against the United States unless a statute expressly authorizes such an award." *Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997). Because "Congress has not waived the government's sovereign immunity for attorneys' fees and expenses under the FTCA," prevailing parties on an FTCA claim are not entitled to a fee award against the United States.[5] *Id.* at 1191–92. Plaintiff does not oppose the motion to strike. Resp., ECF 17 at 28. The Court strikes Plaintiff's demand for attorney's fees.

## CONCLUSION

Defendant's Motion to Dismiss, ECF 14, is GRANTED. Plaintiff's battery claim based on the use of crowd control methods is dismissed with leave to amend. Her IIED claim based on the same is dismissed with leave to amend. Her negligence claim is dismissed without leave to amend. Her jury demand and request for attorney's fees are struck. Any amended complaint is due in 21 days.

**IT IS SO ORDERED.**

DATED this 22nd day of July, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[5] The FTCA does limit the attorney's fees that may be charged on an FTCA claim on a contingency fee basis, 28 U.S.C. § 2678, but this statute does not waive sovereign immunity for FTCA claims. *See Campbell v. United States*, 835 F.2d 193, 196 (9th Cir. 1987).